UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TERRY D. GILLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-31 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 9 and 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Terry Gilland seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On March 7, 2008, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began December 7, 2007. [Tr. 26-27]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On October 7, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 6-25].

On November 3, 2009, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since December 7, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Degenerative disc disease, post-laminectomy syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform unskilled work at the light exertional level as defined in 20 CFR 404.1567(b) with no sitting, standing or walking more than a total of 4 hours each during an 8 hour work day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 8, 1964 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563).

8. The claimant has a marginal to limited education and is able to communicate in English (20 CFR 404.1564).

2

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2007 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 33-39].

## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

3

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial

4

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors

5

were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     EVIDENCE

The evidence in the record can be summarized as follows

### A.     Medical Evidence

*1.    James Killeffer, M.D.*

In December 2006, a year before Plaintiff's alleged onset date, James Killeffer, M.D., performed surgery on Plaintiff's back after a work-related incident. [Tr. 194, 197, 201-04]. The Plaintiff continued to complain of back and leg pain in April 2007. Dr. Killeffer noted that, with regard to his pain, the Plaintiff "thinks he is worse than he was before surgery," and Dr. Killeffer observed that the Plaintiff's belief "is consistent with this physical therapy notes." [Tr. 195]. Dr. Killefer imparted, "Mr. Gilland is just not getting any better." Dr. Killefer observed that the surgery had yielded "anatomical result[s that] look[ed] good," but even coupled with physical therapy and medications, Dr. Killefer explained, "I have had no success in treating Mr.

6

"Gilland's discomfort."

An MRI scan of Plaintiff's lumbar spine completed February 16, 2007 was generally normal, with "evidence of enhancement at L4-L5 level presumably related to prior surgery at [that] level." [Tr. 198].

*2.    Donald Lakatosh, M.D.*

The Plaintiff subsequently sought treatment from Donald Lakatosh, M.D., who treated Plaintiff from May 2007 through November 2008. [Tr. 33, 34, 146-47, 219-44, 259-64, 278-87]. After an initial consultation on May 11, 2007, Dr. Lakatosh released the Plaintiff to limited duty: no lifting greater than 20 pounds, no pushing, no pulling, no standing greater than one hour continuously, no sitting greater than 30 minutes continuously, a 4 hour work day, 20 hour work week." [Tr. 240].

On May 25, 2007, Plaintiff returned to Dr. Lakatosh requesting an increase in the number of hours he could work. [Tr. 234]. On the same visit, Dr. Lakatosh found: "He has diffuse tenderness over the right PSIS. Straight leg raising remains positive on the right. There are persistent subtle L5 sensory deficits." [Tr. 234]. Dr. Lakatosh decreased the Plaintiff's work restrictions, allowing him: "8 hours per work day, 40 hours per week. No lifting greater than 20 pounds, no standing greater than 1 hour continuously, no sitting greater than 30 minutes continuously." [Tr. 235].

Dr. Lakatosh indicated Plaintiff had the same limitations in June, July, and August 2007. [Tr. 228-33]. At a visit on September 10, 2007, the Plaintiff reported pain when he took two weeks off from work to bale hay at his farm. [Tr. 226]. At the same visit, Dr. Lakatosh reviewed the findings of a functional capacity evaluation performed at Physiotherapy Associates on August 23, 2007. He noted fairly good effort on the study and summarized the

7

findings of the study by stating, "[H]e was able to perform work in medium physical demand level with respect to material handling activities but shows poor tolerance to any non-material handling activity including standing, walking, climbing, stooping, bending and squatting." [Tr. 226]. Dr. Lakatosh explained, "It is my opinion that Mr. Gilliand has reached maximum medical improvement effective 09/10/2007." [Tr. 227].

Dr. Lakatosh noted in October and November 2007 that Plaintiff continued to work with his assigned restrictions. [Tr. 222-24]. The Plaintiff reported in January 2008 that he had been released from work, but Dr. Lakatosh did not change his opinion regarding Plaintiff's limitations. [Tr. 221]. Dr. Lakatosh did not change his opinions in March, April, or June 2008. [Tr. 259]. He observed in July 2008, "He is currently not employed, but he does work around his property. It is self limited." [Tr. 259]. Further, Dr. Lakatosh noted, "He did do some sweeping earlier this week and had increased pain." [Tr. 259].

In July 2008, however, Dr. Lakatosh filled out a form entitled "Treating Relationship Inquiry" in which he found the Plaintiff's ability to be more restricted than previously indicated. [Tr. 273-276]. Dr. Lakatosh found the Plaintiff could not reliably attend "an eight hour a day, 40 hour work week, week after week, without missing more than 2 days per month." [Tr. 273]. Dr. Lakatosh also opined Plaintiff could continuously sit for only four hours, stand for only two hours, and walk for only two hours during an eight-hour workday. [Tr. 273]. He found the Plaintiff could occasionally lift/carry only six to ten pounds and frequently lift only one to five pounds. [Tr. 273]. Dr. Lakatosh checked boxes indicating that the Plaintiff could: never squat, kneel, or crawl; occasionally bend, stoop, climb stairs, and walk on uneven surfaces; continuously use both hands for manipulation; and needed to avoid vibrations and moving machinery. [Tr. 274].

*3.  Edward Workman, M.D.*

In January 2009, the Plaintiff presented to Edward Workman, M.D. for pain management. [Tr. 309-313]. On physical examination, Dr. Workman noted a poor range of motion of the right lower extremity and a slightly antalgic gait. Dr. Workman noted that the Plaintiff's "pain involves a radicular lumbar pain syndrome with neuropathic lower extremity pain, consistent with L4/5 nerve root scarification as suggested by the latest MRI." [Tr. 312]. Dr. Workman further observed that on examination the Plaintiff demonstrated "minimal pain behavior." [Tr. 312].

In a letter addressed "To Whom It May Concern," dated September 16, 2009, Dr. Workman stated that a functional capacity evaluation completed on August 23, 2007, showed that the Plaintiff "is only capable of performing light duty activity; his original job with City of Knoxville involved heavy equipment operation and maintenance work that was far above the light duty limitations. Given his disability and education level, he is fully disabled from any work activity for which he would be reasonably qualified." [Tr. 289].

*4.  Consulting Medical Sources*

On May 27, 2008, Frank Pennington, M.D., reviewed the Plaintiff's medical records. He found that the Plaintiff could perform light work. Specifically, he found the Plaintiff could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; and push and pull with only his lower extremities. [Tr. 249].

After reviewing the Plaintiff's medical records on July 31, 2008, Joe Allison, M.D., also found that the Plaintiff could perform light work with the same functional abilities as Dr. Pennington found, except that Dr. Allison concluded that the Plaintiff had an unlimited ability to

9

push or pull. [Tr. 266].

**B.      Other Evidence**

At the hearing before the ALJ, Anne B. Thomas, a vocational expert, testified about the work the Plaintiff has performed in the past and the availability of jobs to him in the regional and national economies. The ALJ presented a hypothetical to Ms. Thomas including the residual functional capacity found by the ALJ in his written decision, see supra at 2, and asked Ms. Thomas if, given these work restrictions, there would be jobs available to the Plaintiff in the national and regional economies. [Tr. 22-23]. She confirmed there would be work available in significant numbers. [Tr. 23]. Ms. Thomas confirmed that, if the Plaintiff took breaks to lie down and rest during the day beyond normal breaks, he would not be able to perform these jobs. She also testified that, if the Plaintiff's impairments forced him to miss two or three days a month, he would not be able to sustain competitive work. [Tr. 24].

The Plaintiff also testified before the ALJ. [Tr. 9-21]. The Court will include any pertinent testimony in its analysis below.

**V.     POSITIONS OF THE PARTIES**

The Plaintiff presents two allegations of error. First, he argues that the ALJ failed to properly consider the opinion evidence of Plaintiff's treating physician, Donald Lakatosh, M.D. [Doc. 10 at 9]. Second, he argues that the ALJ erred in his credibility determination. [Doc. 10 at 12].

The Commissioner responds that the ALJ properly considered the relevant medical evidence and opinions from medical sources, including Dr. Lakatosh, in assessing the Plaintiff's residual functional capacity. [Doc. 14 at 3]. The Commissioner maintains that substantial

10

Case 3:11-cv-00031-TAV-HBG   Document 15   Filed 12/27/11   Page 10 of 16   PageID #: 63

evidence supports the ALJ's finding that the Plaintiff's allegations of disabling limitations were not credible. [Doc. 14 at 11].

VI.   ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

A.    **Weight Afforded to the Opinion of Donald Lakatosh, M.D.**

The Plaintiff first argues that the ALJ did not afford proper weight to the opinions of Donald Lakatosh, pursuant to the treating physician rule. The Commissioner maintains that the ALJ evaluated Dr. Lakatosh's opinion and afforded it weight consistent with the treating physician rule and 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

The ALJ summarized the Plaintiff's treatment with Dr. Lakatosh as follows:

> Records from Dr. Donald Lakatosh, M.D.P.A. show an initial examination of the claimant on May 11, 2007, for a pain management program. The claimant was started on a TENS unit with an initial assessment for the post lumbar laminectomy syndrome with right L5 radiculopathy. The claimant was released to limited light duty lifting no greater than 20 pounds with no pushing or pulling, no standing greater than one hour, no sitting more than 30 minutes continuously; a four hour work day; and, a 20 hour work week. On May 25, 2007 his work status was increased to full time 8 hour work day 40 hour work week. His medications and limitations were continued in June 8, 2007 and July 9, 2007 when Celebrex was added to the regime. Cymbalta was added on August 6, 2007 with no change in work duty status. On September 10, 2007 Dr. Lakatosh reported that the claimant was at maximum medical improvement under worker's compensation medical standards resulting in a whole person impairment rating of 31% under those standards. The claimant was continued on Percocet during his next two monthly visits with reports that the claimant was continuing to work with his restrictions. On March 5, 2008 he was given medications for cramping. He continued with monthly visits thereafter with no significant changes reported on July 8, 2008, and medications were continued on September 8, 2008 and November 3, 2008.

11

[Tr. 33-34]. With regard to the "Treating Physician Inquiry," the ALJ explained:

> On July 8, 2008[,] Dr. Lakatosh reported the claimant could continuously sit 4 hours, stand 2 hours, and walk 2 hours during an 8 hour work day; occasionally lift/carry 6-10 pounds and frequently lift 1-5 pounds; never squat, kneel, or crawl; occasionally bend, stoop, climb stairs, walk on uneven surfaces; continuously use both hands for manipulation; and avoid vibrations and moving machinery. Given the lengthy period of treatment by Dr. Lakatosh, his opinions are afforded appropriate weight.

[Tr. 37 (internal citations omitted)].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). And as the Court of Appeals for the Sixth Circuit has recently reaffirmed, the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam).

In this case, the Plaintiff argues that the ALJ's statement that he afforded "appropriate" weight to Dr. Lakatosh's findings does not clarify the weight afforded to the findings in the Inquiry form or the reasons such weight was afforded. As the Plaintiff notes, the ALJ, apparently, did not fully credit Dr. Lakatosh's findings from the "Treating Physician Inquiry." Specifically, the ALJ did not find that the Plaintiff was as restricted in his ability to lift and carry items as Dr. Lakatosh indicated in the Inquiry, and the ALJ did not endorse the exertional limitations – for example on bending and stooping – found by Dr. Lakatosh.

The Commissioner has, in response, reminded the Court that opinions and decisions on whether the claimant is able to work and his or her RFC are reserved for the Commissioner. See 20 C.F.R. § 404.1527(e); Soc. Sec. Rul. 96-5. [Doc. 14 at 6]. Further, the Commissioner argues that the restrictions indicated by Dr. Lakatosh in the Inquiry form were not consistent with his treatment notes and the other evidence in the medical record. [Doc. 14 at 7].

The Commissioner's arguments that Dr. Lakatosh's findings from the Inquiry form were not entitled to controlling weight are not unconvincing. Nonetheless, the ALJ in his written decision did not cite these reasons for discounting Dr. Lakatosh's findings. Instead, the ALJ stated that he had given the findings "appropriate" weight. The Commissioner has not cited the Court to a case finding that a statement that "appropriate" weight has been afforded suffices as "specific reasons for the weight given to the treating source's medical opinion, supported by

13

evidence in the case record, [which are] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." See Soc. Sec. Rul. 96-2p. The Court's review of the opinion indicates that it does not satisfy the statutory requirement to give "good reasons."

This case is not unlike Stacey v. Commissioner of Social Security, Case No. 10-3518 (slip opinion, unreported) (6th Cir. Dec. 19, 2011), a case released just days ago by the Court of Appeals for the Sixth Circuit. In Stacey, a treating physician opined that the plaintiff was permanently limited to performing only sedentary work, a finding which would direct a finding of disability. Id. at 3. The ALJ in Stacey appeared to have discussed the opinion of the treating physician, but he adopted the opinion of a state agency reviewing physician over that of the treating physician.

The Court of Appeals in Stacey found that the ALJ's decision fell short of the applicable statutory requirements, explaining, "We have no idea whether the ALJ (1) discounted Dr. Randolph's opinion for valid reasons, (2) discounted Dr. Randolph's opinion for invalid reasons or (3) simply ignored Dr. Randolph's opinion altogether in reaching his conclusion that Stacey has the residual functional capacity to perform light work." Id. at 4.

In this case, the Court cannot determine from the ALJ's written decision whether the ALJ: (1) discounted Dr. Lakatosh's opinion for valid reasons, (2) discounted the opinion for invalid reasons or (3) simply ignored portions of Dr. Lakatosh's opinion. Accordingly, the undersigned will recommend that this case be remanded for explanation of the weight afforded to Dr. Lakatosh's findings as contained in the "Treating Relationship Inquiry," [Tr. 273-76].

14

## B.     The ALJ's Credibility Determination

The Plaintiff next argues that the ALJ erred in evaluating the Plaintiff's credibility. [Doc. 10 at 13]. The Commissioner argues that the ALJ's credibility determination is supported by the fact that the Plaintiff did not seek more aggressive treatment and the opinions of the reviewing physicians. [Doc. 14 at 12].

In his credibility determination, the ALJ states only the standard for making a credibility determination and credibility finding, without applying this standard to the facts of this case. Again, the Commissioner in his brief provides arguments that support, somewhat, the ALJ's finding. The ALJ did not however state that he was discounting the Plaintiff's credibility on these bases.

Significant deference is given to an ALJ's credibility finding. Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007). However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." Rogers v. Comm. of Social Sec., 486 F.3d 234, 248 (6th Cir. 2007). In this case, the ALJ provided little more than a blanket assertion, which was not consistent with the record as a whole. Accordingly, the Court recommends that this case also be remanded for further explanation of the credibility determination.

## VII. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS**[1] that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **DENIED** and that the Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **GRANTED**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for further explanation of the weight afforded to Dr. Lakatosh's opinion and for further explanation of the ALJ's credibility determination.

Respectfully submitted,

   /s H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).